IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOE CAMPBELL, d/b/a Campbell Building Services, | ) ) ) | |
| Plaintiff and Counterclaim Defendant, | ) ) ) | 1:12CV1366 |
| v. | ) ) | |
| APEX IMAGING SERVICES, INC., | ) ) ) | |
| Defendant and Counterclaim Plaintiff. | ) ) | |

_____

| | | |
|---|---|---|
| APEX IMAGING SERVICES, INC., | ) ) | |
| Plaintiff, | ) ) ) | 1:12CV1365 |
| v. | ) ) | |
| JOE CAMPBELL, d/b/a Campbell, Building Services, | ) ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

The above-captioned cases are before the Court on a number of Motions. In both cases listed above, Joe Campbell, doing business as Campbell Building Services ("Campbell"), has filed a Motion to Consolidate Case Nos. 12-CV-01365 and 12-CV-01366 and to Stay or Dismiss Case No. 12-CV-01365 ("Motions to Consolidate") [Doc. #20 in case number 1:12-CV-1365 & Doc. #37 in case number 1:12-CV-1366]. In addition, in case number 1:12-CV-1366, Apex Imaging Services, Inc. ("Apex") has filed a Motion to Transfer Venue to the Southern District of Illinois

("Motion to Transfer") [Doc. #28 in case number 1:12-CV-1366], Campbell has filed a Motion to Strike Defendant's Reply in Support of its Motion to Transfer ("Motion to Strike") [Doc. #41 in case number 1:12-CV-1366], and Apex has filed a Motion to Dismiss the Second Claim for Unfair and Deceptive Acts or Practices ("Motion to Dismiss") [Doc. #20 in case number 1:12-CV-1366]. All Motions are fully briefed and ready for the Court's review.

I. FACTUAL AND PROCEDURAL BACKGROUND

Campbell filed his Complaint [Doc. #14 in case number 1:12-CV-1366] on October 15, 2012, in the Superior Court of Davie County, North Carolina, asserting claims against Apex for breach of contract and unfair and deceptive trade practices. In his Complaint, Campbell alleges that in April of 2012, Apex contracted with Campbell to perform construction work on existing buildings belonging to Home Depot and Pilot Gamerooms in Illinois, Ohio, Indiana, Nebraska, and Pennsylvania. Campbell further alleges that he performed all work contracted for during the months of May through September, 2012, but that Apex "failed and refused to make full payment for the contracted jobs." (Campbell Compl. [Doc. #14 in case number 1:12-CV-1366], ¶ 6.) Campbell alleges that Apex owes Campbell a total of $96,940.00 for contracted work. In addition, Campbell alleges that Apex's conduct in this case is part of a "pattern and practice" that constitutes unfair and deceptive trade practices in violation of the North Carolina General Statutes Section § 75-1.1. (Campbell Compl. [Doc. #14 in case number 1:12-CV-1366], ¶¶ 10 & 11.)

On October 24, 2012, Apex filed a Complaint [Doc. #1 in case number 1:12-CV-1365] against Campbell in the United States District Court for the Central District of California,

2

asserting claims for breach of contract and negligence. In its Complaint, Apex alleges that in June and July of 2012, Apex issued written purchase orders to Campbell for remodeling projects in various Home Depot and Pilot locations. Apex alleges that for the projects addressed in the Complaint, "Campbell poorly performed services on [the] project, and/or failed to pay his subcontractors, who then threatened to place a mechanic's lien on the project. . . . Apex was required to expend monies to remedy [Campbell's] poor performance and satisfactorily complete the project." (Apex Compl. [Doc. #1 in case number 1:12-CV-1365], ¶¶ 21, 26, 31, 36, 41, & 46.) Apex further alleges that it performed all "conditions, convenants, and promises" required under the written contracts. (Apex Compl. [Doc. #1 in case number 1:12-CV-1365], ¶¶ 22, 27, 32, 37, 42, & 47.) Apex alleges that it incurred a total of $320,155.24 in backcharges due to Campbell's allegedly poor performance under the contracts. In addition, Apex alleges that Campbell owed a duty to Apex to provide adequate construction services and that Campbell breached that duty by performing poorly on the projects and by failing to pay his subcontractors. Apex further alleges that Campbell's breach of duty caused Apex to lose its reputation and goodwill with Pilot and caused Pilot to terminate its contracts with Apex. As such, Apex alleges consequential damages in excess of $1,000,000.00.

On November 26, 2012, Apex improperly removed Campbell's case, as originally filed in Davie County, North Carolina, to the United States District Court for the Central District of California.[1] On December 26, 2012, based on a stipulation by the parties,[2] Apex's case, as

---

[1] Pursuant to Title 28, United States Code, Section 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, *to the district court of the United States for the district and*

3

originally filed in the United States District Court for the Central District of California, and Campbell's case, as originally filed in the Superior Court of Davie County, North Carolina, both were transferred to this Court and docketed as case numbers 1:12-CV-1365 and 1:12-CV-1366, respectively. Thereafter, Apex answered Campbell's Complaint and filed Counterclaims in case number 1:12-CV-1366. Apex also filed its present Motion to Dismiss and Motion to Transfer in case number 1:12-CV-1366. In addition, Campbell filed Motions to Consolidate in both cases and his present Motion to Strike in case number 1:12-CV-1366. The Court will address each of the pending Motions in turn.

## II.  MOTIONS TO CONSOLIDATE

As noted above, after Apex's and Campbell's cases were transferred to this Court, Apex filed Counterclaims in response to Campbell's Complaint in case number 1:12-CV-1366. Such Counterclaims restate, verbatim, the claims and allegations of Apex's Complaint in case number 1:12-CV-1365. Because Campbell filed his Complaint first in time,[3] and because Apex's

---

*division embracing the place where such action is pending.*" 28 U.S.C. § 1441(a) (emphasis added). Because Campbell originally filed his Complaint in the Superior Court of Davie County, North Carolina, the proper District for removal would be the Middle District of North Carolina, which embraces Davie County, and not the Central District of California.

[2] According to Campbell's Response in Opposition to Apex's Motion to Transfer, Campbell initially considered moving to remand his case back to state court and for sanctions against Apex based on the improper removal. See 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). In lieu of proceeding with a remand, however, Campbell agreed to have both cases at issue transferred to the Middle District of North Carolina.

[3] The Court notes that although the case number in which Campbell's Complaint is filed, that is case number 1:12-CV-1366, has a later sequential number than the case in which Apex's Complaint is filed, that is, case number 1:12-CV-1365, Campbell originally filed his Complaint in Davie County, North Carolina on October 15, 2012. Apex did not file its

4

Complaint is identical to its Counterclaims, Campbell moves to consolidate the two cases and proceed only in case number 1:12-CV-1366. In addition, Campbell moves to dismiss case number 1:12-CV-1365 in the interests of efficiency and avoiding confusion. Apex consents to consolidating the two cases and proceeding at this time in case number 1:12-CV-1366. However, Apex asks that the Court stay, rather than dismiss, case number 1:12-CV-1365 until after resolution of all matters in case number 1:12-CV-1366.

Given that the two cases at issue, case numbers 1:12-CV-1365 and 1:12-CV-1366, involve the exact same parties, facts, and claims, and given that both parties consent to consolidation, the Court will grant Campbell's Motions to Consolidate [Doc. #20 in case number 1:12-CV-1365 & Doc. #37 in case number 1:12-CV-1366] and will consolidate case number 1:12-CV-1365 with case number 1:12-CV-1366. As such, the present dispute between Campbell and Apex shall proceed in case number 1:12-CV-1366 only. Furthermore, the Court finds no reason to have two cases with identical parties, facts, and claims pending on the docket at this time. Therefore, the Court will dismiss without prejudice case number 1:12-CV-1365.

III.  MOTION TO TRANSFER

Apex moves to transfer case number 1:12-CV-1366[4] from the Middle District of North Carolina to the Southern District of Illinois pursuant to Title 28, United States Code, Section

---

Complaint in the United States District Court for the Central District of California until October 24, 2012.

[4] Given that the Court will consolidate case numbers 1:12-CV-1365 and 1:12-CV-1366, and will dismiss case number 1:12-CV-1365, the remaining discussion in this Memorandum Opinion and Order relates only to the motions filed in case number 1:12-CV-1366.

1404, "[f]or the convenience of parties and witnesses" and "in the interest of justice."[5] 28 U.S.C. § 1404(a). Section 1404 "'is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" Republic Mortg. Ins. Co. v. Brightware, Inc., 35 F. Supp. 2d 482, 484 (M.D.N.C. 1999) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988) (internal quotations omitted)). The exercise of such discretion involves the weighing and consideration of a number of factors, including:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

IHFC Props., LLC v. APA Mktg., Inc., 850 F. Supp. 2d 604, 622 (M.D.N.C. 2012) (quoting Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996)). The moving party, in this case Apex, bears the burden of proving that the balance of these factors favors transfer of venue. Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd., 799 F. Supp. 2d 558, 565 (M.D.N.C. 2011). In addition, "'[w]hen deciding a motion to transfer, it is important to bear in mind that such a motion should not be granted if it simply shifts the inconvenience from the

---

[5] Apex concedes that the Middle District of North Carolina is a proper venue for the present case. As such, the Court addresses Apex's Motion to Transfer in the context of the convenience of the parties and witnesses and the interest of justice pursuant to 28 U.S.C. § 1404(a).

defendant to the plaintiff.'" Netalog, Inc., v. Tekkeon, Inc., No. 1:05CV980, 2007 WL 534551, at *5 (M.D.N.C. Feb. 15, 2007) (quoting Plant Genetic Sys., N.V., 933 F. Supp. at 527).

Moreover, in considering a motion to transfer venue based on the convenience of the parties and witnesses, the plaintiff's choice of forum "is accorded great weight, particularly where the plaintiff has brought suit in its home forum." Netalog, Inc., 2007 WL 534551, at *5. A defendant seeking to transfer venue away from the plaintiff's choice of forum "must demonstrate that the balance of the factors weighs 'strongly in [his] favor.'" IHFC Props., LLC, 850 F. Supp. 2d at 623 (quoting Mamani v. Bustamante, 547 F. Supp. 2d 465, 469 (D. Md. 2008)). Courts should afford less weight to the plaintiff's choice of forum, however, if "the suit is filed in a foreign forum or the cause of action bears little relation to the chosen forum." Id.

In support of its Motion to Transfer, Apex first contends that Campbell is the only witness who resides in North Carolina, and that North Carolina otherwise has no relation to the facts and circumstances of this case. In that regard, Apex contends that six (6) of thirteen (13) projects relevant to this case took place within the Southern District of Illinois, that none of the projects took place in North Carolina, and that sixteen (16) of twenty-two (22) witnesses identified by Apex live closer to the Southern District of Illinois than to the Middle District of North Carolina. In addition, Apex contends that it will be easier for its eleven (11) party-witnesses to travel to the Southern District of Illinois than to the Middle District of North Carolina. Specifically, Apex, which is located in California, contends that its employee-witnesses can travel in less time and at a lower cost from the Los Angeles International Airport ("LAX")

7

to the Lambert-St. Louis International Airport in St. Louis, Missouri,[6] as compared to the travel required from LAX to the Piedmont Triad International Airport in Greensboro, North Carolina.

In contrast, Campbell contends that, in addition to himself, three non-party witnesses reside in the Middle District of North Carolina. In addition, Campbell contends that although some of the non-party witnesses identified by Apex may live somewhat closer to the Southern District of Illinois than to the Middle District of North Carolina, no witnesses currently identified by either party reside within the Southern District of Illinois. Furthermore, Campbell contends that both parties will be forced to incur additional costs associated with hiring local counsel in Illinois should venue be transferred to the Southern District of Illinois, thereby potentially negating any savings in travel costs for Apex. Moreover, Campbell contends that the parties already expended a great deal of time and money stipulating to the transfer of the cases at issue to the Middle District of North Carolina from the Central District of California after Apex improperly removed Campbell's Complaint to California from Davie County, North Carolina.

After considering the appropriate factors in light of the information presented by both parties, the Court concludes that Apex has failed to meet his burden of showing that the balance of these factors weighs strongly in favor of transferring venue from the Middle District of North Carolina to the Southern District of Illinois. In so concluding, the Court notes that Campbell chose to file this case in Davie County, North Carolina, which is the County of his residence.

---

[6] It appears that Apex contends that the Lambert-St. Louis International Airport in St. Louis, Missouri, would be the most convenient airport for travel between Los Angeles, California, and the District Court in the Southern District of Illinois.

8

Although both parties agree that none of the underlying construction projects took place in North Carolina, the Court notes that three non-party witnesses, in addition to Campbell, reside in this District. In addition, the Court notes that only five (5) of the eleven (11) non-party witnesses identified by Apex live closer to the Southern District of Illinois than to the Middle District of North Carolina. Therefore, the information presently before the Court indicates that more non-party witnesses, three (3) for Campbell and six (6) for Apex, for a total of nine (9), live closer to the Middle District of North Carolina than to the Southern District of Illinois. In addition, Apex has not identified any witness who lives within the Southern District of Illinois. Furthermore, the Court notes that both parties likely will face additional costs associated with hiring local counsel in Illinois if this case is transferred. Such information does not strongly weigh in favor of a transfer. Rather, the Court finds that, overall, Apex has shown only that the Southern District of Illinois may prove to be a slightly more convenient forum for Apex's eleven (11) employee-witnesses who must travel from California. The Court will not, however, transfer this case to an alternate venue simply to shift the conveniences in Apex's favor, particularly where Campbell filed this action in his home forum. Therefore, the Court concludes that venue is proper in the Middle District of North Carolina and that considerations of convenience do not favor transfer of venue to the Southern District of Illinois. As such, the Court will deny Apex's Motion to Transfer.[7]

---

[7] The Court notes that Campbell filed a Motion to Strike Apex's Reply to the Motion to Transfer, primarily contending that Apex raised new issues and facts in its Reply which were not raised in Campbell's Response. Campbell contends that raising new issues violates Local Rule 7.3(h) and, therefore, the Court should strike Apex's Reply from the record. See L.R.

9

IV.     MOTION TO DISMISS

Based on the Complaint filed by Campbell in case number 1:12-CV-1366, Apex moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Campbell's Second Claim for Relief, that is, Campbell's Unfair and Deceptive Trade Practices Act ("UDTPA") claim, for failure to state a claim upon which relief can be granted.  In reviewing a Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must "'take the facts in the light most favorable to the [non-moving party],' but '[it] need not accept the legal conclusions drawn from the facts,' and '[it] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'"  Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)).  The Supreme Court, in Ashcroft v. Iqbal, noted that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).  In this regard, the Iqbal Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," but Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 677-78, 678-79, 129 S. Ct. at 1949,

---

7.3(h) ("A reply brief is limited to discussion of matters newly raised in the response.").  In considering Campbell's Motion to Strike, the Court notes that because the Court will deny Apex's Motion to Transfer for the reasons set forth above, Campbell's Motion to Strike is rendered moot and will be denied as such.

1950. Pleadings containing "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement,'" will not survive a motion to dismiss. Id. at 678, 129 S. Ct. at 1949. Thus, dismissal of a complaint is proper where a plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 683, 129 S. Ct. at 1952 (internal quotation omitted)).

For purposes of his UDTPA claim, Campbell alleges the following:

> Upon information and belief, [Apex] has engaged in a pattern and practice of contracting with small local contractors such as [Campbell], paying them for only a fraction of the total work done. When the local contractor refuses to perform work on new jobs until he is paid for the work done on earlier jobs, [Apex] terminates the local contractor's services, and hires another contractor to complete the work left unfinished by the original contract, or hires yet another to begin work on new jobs.

(Campbell Compl. [Doc. #14 in case number 1:12-CV-1366], ¶ 10.) Campbell further alleges that such conduct, "constitutes unfair and deceptive trade practices in violation of N.C.G.S. § 75-1.1 et. seq." (Campbell Compl. [Doc. #14 in case number 1:12-CV-1366], ¶ 11.) Under North Carolina law, "[a]n act or practice is unfair if it 'is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 41, 626 S.E.2d 315, 322-23 (2006) (quoting Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981)). Furthermore, "[a]n act or practice is deceptive if it 'has the capacity or tendency to deceive.'" Id. (quoting Marshall, 302 N.C. at 548, 276 S.E.2d at 403). However, "[i]t is well recognized . . . that actions for unfair and deceptive trade practices

11

are distinct from actions for breach of contract . . . and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1-1." Hardin v. York Mem'l Park, 730 S.E.2d 768, 778 (N.C. Ct. App. 2012) (internal quotations and citations omitted) (alterations in original), rev. denied, 738 S.E.2d 376 (N.C. 2013); see also Ellis v. Louisiana-Pacific Corp., 699 F.3d 778, 787 (4th Cir. 2012) ("'[I]t is unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations.'" (quoting Eastover Ridge L.L.C. v. Metric Constructors, Inc., 139 N.C. App. 360, 368, 533 S.E.2d 827, 833 (2000))). Rather, "[s]ubstantial aggravating circumstances must attend a breach of contract to permit recovery as an unfair or deceptive trade practice." Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111, 657 S.E.2d 712, 717 (2008).

In its Motion to Dismiss, Apex contends that Campbell "simply alleges a contract dispute" between the parties and fails to allege any facts that Apex engaged in unfair or deceptive practices. (Apex's Br. in Support of Mot. to Dismiss [Doc. #21 in case number 1:12-CV-1366], at 9.) In contrast, Campbell contends that the allegations in his Complaint give rise to a "reasonable inference" that Apex "had in place a practice where they established contracts in which [Apex] intentionally deceived and mislead contractors into providing unilateral partial performance in anticipation of receiving payment for the completed job, and then cancell[ed] the contract when the contractors demanded that they be paid for the work performed to date." (Campbell's Br. in Opposition to Mot. to Dismiss [Doc. #31 in case number 1:12-CV-1366], at 3.) As such, Campbell contends that he has alleged "more than adequate facts of aggravating

12

circumstances in order to maintain a case for unfair or deceptive trade practices." (Campbell's Br. in Opposition to Mot. to Dismiss [Doc. #31 in case number 1:12-CV-1366], at 4.)

Based on the allegations set forth in the Complaint, the Court finds that Campbell has failed to allege substantial aggravating circumstances that would elevate the breach of contract claim against Apex to a claim arising under the UDTPA. In so finding, the Court notes that although Campbell attempts to elaborate on his UDTPA claim within his briefing in opposition to Apex's Motion to Dismiss, Campbell's complaint contains no more than "labels and conclusions" and, therefore, fails to meet the threshold requirements for surviving a Motion to Dismiss under Iqbal and Twombly.[8] Moreover, to the extent that Campbell has made any factual allegations at all with respect to his UDTPA claim, such allegations appear to be based upon information provided by an unnamed source without any apparent connection to the circumstances at issue in this case. The Court finds such allegations speculative at best and insufficient to survive Apex's Motion to Dismiss at this time. For the foregoing reasons, the Court will grant Apex's Motion to Dismiss and will dismiss Campbell's UDTPA claim. However, to the extent that Campbell may be able to provide additional factual support for his UDTPA claim, the Court will dismiss such claim without prejudice to Campbell filing a Motion Seeking Leave to Amend his Complaint within fourteen (14) days of the date of this

---

[8] Although the Court acknowledges that Campbell attempts to provide additional information in his briefing solely for the purpose of responding to Apex's Motion to Dismiss, the Court takes no position at this time as to whether such additional information, as provided, would be sufficient to survive a Motion to Dismiss if included in the present Complaint or an Amended Complaint.

Memorandum Opinion and Order.

V.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that Campbell's Motions to Consolidate Case Nos. 12-CV-01365 and 12-CV-01366 and to Stay or Dismiss Case No. 12-CV-01365 [Doc. #20 in case number 1:12-CV-1365 & Doc. #37 in case number 1:12-CV-1366] are hereby GRANTED and the present dispute between Campbell and Apex shall proceed in case number 1:12-CV-1366 only. IT IS FURTHER ORDERED that case number 1:12-CV-1365 is hereby DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED the Apex's Motion to Transfer Venue to the Southern District of Illinois [Doc. #28 in case number 1:12-CV-1366] is hereby DENIED. IT IS FURTHER ORDERED that Campbell's Motion to Strike Defendant's Reply in Support of its Motion to Transfer [Doc. #41 in case number 1:12-CV-1366] is hereby DENIED AS MOOT.

FINALLY, IT IS ORDERED that the Motion to Dismiss the Second Claim for Unfair and Deceptive Acts or Practices [Doc. #20 in case number 1:12-CV-1366] is hereby GRANTED and Campbell's Unfair and Deceptive Trade Practices Act claim is hereby DISMISSED WITHOUT PREJUDICE to Campbell filing a Motion Seeking Leave to Amend his Complaint within fourteen (14) days of the date of this Memorandum Opinion and Order.

This, the 7th day of August, 2013.

_\[signature\]_

United States District Judge